UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | Docket No. 1:24-cr-10071-FDS |
| ERIC TABARO NSHIMIYE, ) | |
| ) | |
| Defendant. ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR REVOCATION OF PRETRIAL DETENTION ORDER BASED ON DUE PROCESS CONCERNS**

Defendant Eric Tabaro Nshimiye ("Nshimiye") seeks the revocation of the Court's pretrial detention order, arguing the length of his pretrial confinement (14 months) violates Due Process. Although his motion relies heavily on changed family circumstances, the defendant is not seeking—and, indeed, is not entitled to seek—to reopen the detention proceedings in their entirety. Rather, the only issue properly raised by Nshimiye's motion is whether the length of his pretrial confinement violates Due Process. The answer to that question is – no. The seriousness of the charges, the strength of the government's proof that Nshimiye poses a risk of flight, and the strength of the government's case on the merits all weigh heavily in favor of denying Nshimiye's motion. Moreover, to the extent the complexity of pretrial proceedings has extended the length of the defendant's pretrial detention, that owes more to the defendant's strategic choices than any government conduct, further warranting denial of his motion.

**Relevant Background**

The Court is well aware of the pretrial proceedings in this matter, much of which is described in the defendant's Motion for Revocation of the Pretrial Detention Order. [D.95]. The government will not restate that factual and procedural background here, except to say the defendant had a full detention hearing in the Northern District of Ohio after having an opportunity

to fully prepare [D.30]; his attempts to reopen the detention litigation in the District of Massachusetts failed because he did not present any changed circumstances as required by 18 U.S.C. § 3142(f) [*id.*]; and his appeal of the detention order to the District Court (Saylor, J.) was rejected, as the Court rightly determined Nshimiye poses "a serious risk of flight were he to be released before trial" and that no combination of conditions would reasonable assure his appearance [D.43].

After the denial of his detention appeal, the defendant sought—*ex parte* and under seal—the issuance of letters rogatory to multiple foreign courts and/or international bodies. [D.55]. The government timely opposed this request on numerous grounds. [D.58]. On April 15, 2025, after allowing the defendant's request to proceed *ex parte* and under seal, the Court rejected all but two of the defendant's requested letters and ordered the defendant to disclose the remaining two letters to the government so it could respond. [D.84]. Counsel for Nshimiye provided the two letters to the government on or about April 24, 2025. The government, in turn, agreed to seek some of the requested information and, on May 27, 2025, the defendant withdrew his request for the letters. [D.97]. As reflected in the parties' most recent joint status report [D.100], the government intends to seek the transfer of this matter to the District Court in July and, thereafter, the earliest practicable trial date.

**Legal Standard and Argument**

Where a defendant asserts that his continued detention raises due process concerns, the First Circuit instructs the Court to consider (1) the seriousness of the charges, (2) the strength of the government's proof that defendant poses a risk of flight or a danger to the community, (3) the strength of the government's case on the merits, (4) the length of the detention that has in fact

occurred, (5) the complexity of the case, and (6) whether the strategy of one side or the other has added needlessly to that complexity. *United States v. Zannino*, 798 F.2d 544, 547 (1st Cir. 1986).

The first three *Zannino* factors weigh heavily in the government's favor. The allegations in this case are especially serious. They involve the defendant's decades long scheme to conceal his acts of violent persecution—including multiple murders—during the 1994 Rwandan genocide from multiple layers of U.S. immigration authorities, as well as the defendant's perjured testimony as a defense witness in the trial of a convicted Rwandan genocidaire, Jean Leonard Teganya. As the District Court noted in its order affirming this Court's pretrial detention order, the weight of the evidence against Nshimiye is substantial. [D.43 at p.6]. A significant part of the government's case is based on Nshimiye's own admissions, made while testifying under oath in the Teganya trial, about lying to U.S. immigration officials to obtain refugee status in the United States. Other parts of the case are premised on uncontroverted immigration records and the testimony of percipient witnesses—many of whom have previously testified credibly before U.S. and U.N. courts—about the defendant's acts of genocidal violence.

The strength of the government's proof that the defendant poses a risk of flight is likewise manifest. Nshimiye fled Rwanda and has attempted to conceal the truth about his crimes there for decades, thus increasing the likelihood that (if given the opportunity) he would flee to continue that concealment. If convicted, he faces a considerable sentence and the prospect of being denaturalized and returned to Rwanda, where he will likely face additional charges for his crimes there and potentially even a life sentence. *See, e.g.,* https://www.ice.gov/news/releases/human-rights-violator-sentenced-life-prison-rwanda (describing the case of Beatrice Munyenyezi, who received a life sentence in Rwanda in 2024 after a 2013 conviction in the United States District

3

Court for the District of New Hampshire). Given these facts, it is hardly surprising that a judge in the Northern District of Ohio and the District Court here separately determined that the defendant was a serious flight risk and that no combination of conditions would ensure his appearance.[1] [D.43].

With respect to the length of Nshimiye's detention, courts in this circuit have not adopted a bright-line rule regarding what period of detention violates Due Process and, instead, have made case-by-case determinations. *See, e.g.*, *United States v. Tortora*, 922 F.2d 880, 889 (1st Cir. 1990) ("At this stage of the proceedings, Tortora's pretrial incarceration" of more than a year and a half "has not been so protracted as to support a due process claim."); *United States v. Carrozza*, 807 F. Supp. 156, 157 (D. Mass. 1992), *aff'd*, 4 F.3d 70 (1st Cir. 1993) ("All five defendants were detained pending trial, some for more than two years. After taking testimony and receiving other evidence, the court in December 1991 denied their motions to be released on Due Process and Sixth Amendment grounds."); *United States v. Montrond*, No. 09-cr-10278-NMG, 2011 WL 1560932, at *3 (D. Mass. Apr. 25, 2011) ("While [sixteen months is] a significant period of time, I do not feel that his length of incarceration standing alone, is violated of due process, given that

---

[1] Although the defendant styles his motion as one premised solely on Due Process concerns stemming from the length of his pretrial confinement, he nonetheless argues the risk of flight must be "reexamined considering changing circumstances over the past fourteen months." [D.95 at p.11]. The government disputes that a challenge to the length of his pretrial confinement on Due Process grounds inherently requires a wholesale "reexamination" of the risk of flight. Rather, consistent with *Zannino,* the Court need only consider the strength of the government's *existing proof* of the risk of flight. To the extent the Court construes this portion of defendant's motion as one to reopen the detention proceedings based on changed circumstances, the result is the same. According to 18 U.S.C. § 3142(f), in order to reopen the detention hearing, the new information must have a "material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required…." The information proffered by the defendant in support of his motion—that his wife has been unable to work while caring for their son—has very little to do with whether there are conditions of release that will reasonably assure the defendant's appearance. Stated differently, this new information does nothing to mitigate the serious risk of flight presented by the defendant.

4

he faces a mandatory minimum sentence of five years if convicted of the offenses charged, *i.e.*, substantially longer than sixteen months."); *cf. United States v. Cardona*, No. 17-cr-30072-TSH, 2020 WL 1905308, at *2 (D. Mass. Apr. 17, 2020) (finding that a 32-month period of pretrial detention would "cross the threshold from permissible regulation into impermissible punishment" under the circumstances of the case where record indicated defendant played lesser role in conspiracy and did not cause any of the delay in his trial); *United States v. Daniels*, No. 98-cr-30040-MAP, 2000 WL 1611124, at *6 (D. Mass. Oct. 5, 2000) (ordering release of defendant who had been detained for two years under the presumption pursuant to 18 U.S.C. § 3142(e), where "resolution of [a significant pretrial] matter, conservatively speaking, is several months off and trial, if called for, even later" and after finding defendant was not "palpably dangerous" and defendant's proposed conditions of release would reasonably assure his appearance). Here, the length of Nshimiye's pretrial detention does not violate Due Process where he faces a substantial sentence if he is convicted, the strength of the evidence is great, and the risk of flight is serious.

Lastly, the government has done nothing to needlessly add to the complexity of the case or the duration of the defendant's pretrial detention. If anything, it is the defense that has added to the complexity and duration of the pretrial proceedings through its *ex parte* efforts to use letters rogatory to engage in an overseas fishing expedition – efforts that this Court soundly rejected. [D.62]. Once it was made aware of the defense requests, the government promptly agreed to seek the information through its law enforcement partners[2]; and, as stated above, the government

---

[2] Although the government has agreed to seek certain information (namely travel records) from Kenya and Rwanda, it is not clear to the government that such information actually exists. Suffice it to say, the defendant has made conflicting claims about his whereabouts in 1994 and 1995 at various points in time. *See, e.g.,* Indictment ¶ 17. Counsel's assertions about the existence of exculpatory travel records abroad, therefore, appear to be speculative at best.

5

intends to seek the transfer of this matter to the District Court and the earliest possible trial date. All of this is to say, the government has been diligent about moving this case forward towards trial.

## Conclusion

For the foregoing reasons, the government respectfully asks the Court to deny the defendant's motion to revoke the pretrial detention order.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By:    */s/ Jason A. Casey*
        Jason A. Casey
        Amanda Beck
        Assistant U.S. Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Jason A. Casey*
Jason A. Casey
Assistant U.S. Attorney